### BLANKENSHIP et al. v. MOTT et ux.
#### No. 3088.

Court of Civil Appeals of Texas. Beaumont.
April 8, 1937.

Rehearing Denied April 21, 1937.

Phillips, Trammell, Estes, Edwards & Orn, of Fort Worth, and W. S. Poston, of Lufkin, for appellants.

608

Curtis W. Fenley, of Lufkin, for appellees.

O'QUINN, Justice.

Appellees, T. A. Mott, and his wife, Frances Mott, brought this suit in the district court of Angelina county, Tex., against appellants, G. T. Blankenship, Farmers Royalty Holding Company, and Farmers Mutual Royalty Syndicate, Inc., to cancel a mineral deed executed by them on May 20, 1932, conveying to Farmers Royalty Holding Company an undivided three eighths interest in all of the oil, gas, and other minerals in 166 acres of land out of the A. J. Runnels survey in Angelina county, Tex.; and to cancel a mineral deed they had executed on said May 20, 1932, conveying to G. T. Blankenship an undivided one eighth interest in the oil, gas, and other minerals in said 166 acres; and to cancel a mineral deed executed by G. T. Blankenship on July 30, 1932, conveying to Farmers Royalty Holding Company an undivided one thirty-second undivided interest in the oil, gas, and other minerals in said 166 acres of land; and to cancel a mineral deed executed by said Blankenship to Farmers Mutual Royalty Syndicate, Inc., on July 30, 1932, conveying an undivided three thirty-seconds interest in the oil, gas, and other minerals in said land.

As grounds for their action to cancel said deeds, appellees alleged, in substance: (a) That on May 20, 1932, they were the owners in fee simple of a certain tract of land in Angelina county, Tex., containing 166 acres, a part of the A. J. Runnels survey in said county; (b) that on said date, May 20, 1932, the agent of appellants, G. T. Blankenship and Farmers Royalty Holding Company, came to the home of appellees and proposed to them that they pool part of their royalty in said 166 acres of land with appellants and represented to them that appellants were large oil operators with vast holdings in the states of Arkansas, Louisiana, Oklahoma, and Texas, upon which holdings were a large number of producing oil and gas wells from which large dividends were being paid to members of the royalty pool formed by appellants, and exhibited to appellees what appeared to be large checks which had been paid as dividends to various stockholders who had pooled part of their royalty with said Blankenship and said Farmers Royalty Holding Company, and stated to appellees that, if they would pool part of their royalty with said Blankenship and said Farmers Royalty Holding Company, within a very short time they too would be receiving large dividend checks, which representations were false and fraudulent, and known by said appellants and their said agents to be false and fraudulent, and made for the purpose of misleading and deceiving appellees and of inducing them to execute said deeds to said Blankenship and said Farmers Royalty Holding Company, and that they (appellees) believed said representations and, relying thereon and because thereof, did execute said conveyances; (c) that appellees agreed with appellants to pool one-half of their mineral rights in 60 acres of their said land, but that appellants as a part of their fraudulent scheme to get one-half of the mineral rights in all of their land (166 acres), after telling appellees that they (appellants) only desired one-half of the mineral rights in the land pooled (60 acres), fraudulently and deceitfully induced appellees to sign a blank instrument of conveyance so that appellants could fill in said instrument in the blank space therefor the description of the property conveyed, they, appellants, did after appellees had so executed and delivered to appellants said blank instrument of conveyance, fraudulently fill in the description of said conveyed property so as to cover and include the whole of appellees' 166 acres of land, which was done without their knowledge or consent, thereby fraudulently inserting and including in said conveyance other and different property than that intended and agreed to be conveyed, to wit, 106 acres of their said 166 acre tract; (d) that at the time appellees executed said instruments they were husband and wife and resided upon the said 166 acres of land, the same then and there being their homestead, and that said deeds so executed by them to said Blankenship and said Farmers Royalty Holding Company, when delivered to said appellants, did not contain a description of any land whatever, but contained a blank space for the insertion of a description of the property intended to be conveyed, wherefore said deeds were void; (e) that at the time appellees agreed to pool 60 acres of their land with appellants and executed said blank deeds for such purpose they agreed with appellants that appellants could fill in the description in said blank deeds of the property being conveyed, but that, after said blank deeds were executed and delivered to appellants in blank, appellants fraudu-

lently filled in the blank description of the property thereby conveyed to include the whole of appellants' tract of 166 acres, when it was agreed and understood between appellants and appellees that only 60 acres of their 166-acre tract was to be included, which fraudulent inclusion of the remainder of 106 acres was a forgery and a fraud upon appellees and rendered said deeds void; (f) that the only consideration received by appellees for said conveyances was 62.25 shares of the Farmers Royalty Holding Company stock, which were then and at all times since wholly worthless, that no dividend had ever been paid on said stock, and same had no value, wherefore said deeds were without consideration and void; (g) that the notary taking the acknowledgments of appellees to their said deeds was an agent and employee of appellants and disqualified in law to take such acknowledgments, further that said notary taking said acknowledgments did not read the deeds to either of appellees, nor did he read the deeds or either of them to Mrs. Frances Mott, wife of appellee T. A. Mott, nor explain same to her separate and apart from her said husband, but that appellees signed said deeds in the presence of each other, and Mrs. Mott was not examined privily and apart from her husband as required by law when her acknowledgment was taken to said deeds, wherefore said deeds were void; (h) that appellant Farmers Royalty Holding Company and Farmers Mutual Royalty Syndicate, Inc., had notice of the alleged fraud perpetrated and practiced upon appellees because Blankenship was president of Farmers Royalty Holding Company and a member of the board of directors of Farmers Mutual Royalty Syndicate, Inc., and the officers and directors of the two companies were composed of the same people; and (h) that appellees had been damaged by reason of the fraud practiced upon them in the sum of $405.

Appellees made substantially the same allegations as grounds for canceling the deed from Blankenship conveying to him one eighth of the oil, gas, and other minerals in the land. As grounds for canceling the deed from Blankenship to Farmers Mutual Royalty Syndicate, Inc., conveying three thirty-seconds interest in the oil, gas, and other minerals in said land, appellees alleged that such instrument created a cloud upon their title, which should be removed, that Blankenship was the agent for the Farmers Mutual Royalty Syndicate, Inc., said Blankenship then and there and

ever since being its president, and that said syndicate at the time of the execution and delivery of said instrument had full knowledge that the deed to Blankenship had been obtained by the false and fraudulent representation of the agents and employees of said Farmers Royalty Holding Company.

Appellants answered by general demurrer, special exceptions, general denial, and Farmers Royalty Holding Company, that it was an innocent purchaser, and that appellees had ratified the conveyances by them by the execution of a subsequent lease. They prayed that their title to one-half of the oil, gas, and other minerals in the 166 acres be quieted.

The case was tried to the court without a jury, and judgment rendered for appellees canceling each of the deeds complained, and adjudging to appellees all of the oil, gas, and other minerals conveyed to appellants by the several mineral deeds.

It was agreed that on July 30, 1932, G. T. Blankenship was president of the Farmers Royalty Holding Company, and was also a director in Farmers Mutual Royalty Syndicate, Inc.; that both concerns had the same person as secretary, and that the vice president of Farmers Royalty Holding Company was president of Farmers Mutual Royalty Syndicate, Inc. Also it was agreed that T. P. McLain, the person who secured the deeds from appellants, was at the time the agent of G. T. Blankenship in his individual capacity, and in connection with the transaction mentioned in appellees' petition.

Appellee T. A. Mott on July 30, 1932, the date the deeds were executed by himself and wife, was 60 years old, and could not read or write. He testified postively that the deeds when executed and delivered to T. P. McLain, the agent of G. T. Blankenship and Farmers Royalty Holding Company, did not contain any description of any land whatever, but that the blank space in said deeds for a description of the property intended to be conveyed was not filled in, but still blank. Mrs. Mott also so testified. McLain testified that he wrote in the blank space these words: "Being all of our 166 acres of land out of the A. J. Runnels 320 acre survey. Refer to Vol. 78 page 121 deed records Angelina Co., Texas"; that afterwards the description by metes and bounds was typed and pasted over the blank space. Johnson, the notary who took the acknowledg-

ments, testified that Mott got his deed for McLain to get the description of the land from, and that McLain did write in the words above quoted, and that this was before they signed or acknowledged the deed. On cross-examination he testified in answer to whether he could be positive that McLain wrote what appeared in ink in the blank description place, "No, sir; I wouldn't." "Q. You are not positive that this pen and ink writing was on there at the time they signed it. A. No, sir; I can't say that."

The court by his judgment found against appellants' contention and in favor of appellees. The question whether the deeds were blanks when signed and acknowledged was one of fact, and the court was the judge of the weight and credibility of the witnesses, and the evidence supports his finding that the deeds contained no description of any land when signed and delivered. We adopt his finding on this question. That a conveyance of land, or of an interest in land, which does not contain a description of same, is void, is too well settled to require discussion or citation of authority. But appellants say the evidence is not sufficient to support this finding. This contention is without merit. It was a contested fact as to whether the filling in was done at the time of the execution and delivery of the deeds, and the court, by his judgment for appellees, found that at the time Mott and his wife signed and acknowledged and delivered the deeds they contained no description of any land whatever, and so were absolutely void. Farmers Royalty Holding Co. v. Jeffus (Tex.Civ.App.) 94 S.W.(2d) 255.

Appellants say that, if the deeds were void when delivered, appellees ratified them afterwards by recognizing and affirming them in an oil lease. This contention is denied by appellees. The facts are that after the deeds were delivered McLain filled in the blank description and without the knowledge or consent of appellees included in the deed the whole of the 166 acres, when it was agreed and understood that appellees were to pool only 60 acres of their 166 acres, and which thus included 106 acres that were not to be included, and then filed the deed for record, appellees not knowing of the fraudulent inclusion of the 106 acres. It is not believed that deeds being void for want of description when acknowledged and delivered could be ratified by mere reference, if so, to some subsequent lease to a third party. Finkelstein v. Roberts (Tex.Civ. App.) 220 S.W. 401, 405 (writ dismissed); Lasater v. Jamison (Tex.Civ.App.) 203 S. W. 1151, 1154 (writ refused); Merriman v. Blalack, 56 Tex.Civ.App. 594, 121 S.W. 552, 557 (writ refused); Drury v. Foster, 2 Wall. 24, 34, 17 L.Ed. 780, 781; Farmers Royalty Holding Co. v. Jeffus (Tex.Civ. App.) 94 S.W.(2d) 255.

In Merriman v. Blalack, supra, Mrs. Merriman conveyed a tract of land, which was her separate property, without being joined by her husband. This deed was void. Later Mrs. Merriman became a feme sole. It was insisted that the void deed was ratified by Mrs. Merriman after she became a feme sole by the recital in a deed from her and others to a third party that the land had been conveyed by Mrs. Merriman to Henry Merriman. It was held that:

"The deed from Mrs. Merriman to Henry Merriman ·being clearly void, we do not think that this recital can be given effect as a confirmation, validation, or re-execution of it, so as to make it operative as a conveyance of Mrs. Merriman's title. This recital cannot operate as a conveyance or a re-execution of the former void deed. * * *

" 'Confirmation may make good a voidable or defeasible estate, but cannot operate upon an estate void in law, but only confirms its infirmity.' * * * There are no 'apt words of conveyance' from Mrs. Merriman, in the bare recital in the deed to Guzman, that the land had been conveyed by Elizabeth Merriman [Mrs. Merriman] to Henry Merriman, along with the other recitals as to the chain of title, so as to make it operate as a new grant, without which such recitals could not operate to impart to the void deed an efficacy it did not before possess." (Writ refused.)

In Lasater v. Jamison, supra, Mrs. Peel, a married woman, who at the time was separated, but not divorced, from her husband, conveyed her interest in community land, not being joined by her husband in the conveyance. Later, in a contest as to the title to the interest conveyed by Mrs. Peel, and in which it was contended that her husband after such conveyance had recognized and acquiesced in said conveyance, it was held (quoting from eighth paragraph of syllabus of the opinion): "Where a married woman conveyed her interest in community land, her deed, being a nullity,

could not be vitalized by her husband's subsequent acquiesence, but could only be ratified by an act by him having the essential elements of a conveyance." (Writ refused.)

Finkelstein v. Roberts, supra, was a case somewhat similar in some of its parts to the instant case. There Roberts and his wife had a rural homestead consisting of three tracts. They resided on one of the tracts containing 3 acres. They executed an oil lease on their lands, reserving from the lease the 3-acre tract. When the lease was drawn, signed, and acknowledged and delivered by Roberts and his wife, the description of the land leased was left blank, but they authorized the blank to be filled by the insertion of the land leased. Afterwards the blank description was filled in and the 3-acre tract was included along with the other two tracts intended to be leased, this without their knowledge or consent. About four years afterwards Roberts discovered that his 3-acre home place had been included and he filed suit to cancel the lease, contending that the lease, having been executed, acknowledged, and delivered in blank form, as to the description of the property conveyed, was a nullity. From a judgment in the case an appeal was taken to the Fort Worth Court of Civil Appeals. The court held:

"The majority are inclined to the view that, inasmuch as under our statutes a married woman cannot convey any interest in either the homestead or in her separate property without having been joined by her husband and having the instrument fully explained to her and acknowledged before a proper officer, and inasmuch as it has been held that the usual oil lease conveys an interest in the land, therefore the original lease at the time of its acknowledgment by Mrs. Roberts, having contained the blank for description, as hereinbefore stated, was inoperative, and that she could not by parol authorize any one to fill the blank, and that, the blank having been filled in the instance before us, and no subsequent acknowledgment of the lease having been made by the wife, the lease was entirely void. The writer, however, does not feel prepared to go so far under the circumstances of this case. While the contention of appellee and the position of the majority on this point is sustained by common-law authorities and by decision of some of the other states, a number of which are cited in behalf of appellee, the rule in Texas has not been enforced with such strictness"—citing Threadgill v. Butler, 60 Tex. 599; Schleicher v. Runge (Tex.Civ.App.) 37 S.W. 982; Henke v. Stacy, 25 Tex.Civ.App. 272, 61 S.W. 509; McCown v. Wheeler, 20 Tex. 372, 373; Tarrant County v. McLemore (Tex.Sup.) 8 S.W. 94; Gray v. Fenimore (Tex.Com. App.) 215 S.W. 956.

Of the cases cited, in the main they were where the name of the grantee was left blank and authority given to fill in same. None of them were in cases where, as the case there dicussed, or in the instant case, the wife was a party to the instrument and her acknowledgment required to be taken as prescribed by statute. Application to the Supreme Court for writ of error was dismissed.

In Drury v. Foster, supra, the Supreme Court of the United States said: "But there are two insuperable objections to this view in the present case. First, Mrs. Foster was disabled in law from delegating a person, either in writing or by parol, to fill up the blanks and deliver the mortgage; and, second, there could be no acknowledgment of the deed within the requisitions of the statute until the blanks were filled and the instrument complete. Till then there was no deed to be acknowledged. The act of the feme covert and of the officers were nullities, and the form of acknowledgment annexed as much waste paper as the blank mortgage itself, at the time of signing."

Furthermore, it is not believed that the question of ratification was raised. The instrument, an oil lease executed by appellees on April 25, 1934, in which they were joined by appellants, contained this clause: "10. All lessors herein agree that mineral deeds properly executed and now of record conveyed to G. T. Blankenship an undivided ⅛th interest, and to Farmers Royalty Holding Company, a Delaware Corporation, an undivided ⅜ths interest in and to all oil, gas and other minerals in, under, and upon the lands described herein".

This was the only reference to any instrument, executed by any. person or persons, relative to the conveyance of any interest in the minerals in said land. For such reference in the lease to have amounted to a ratification of the void deeds of May 20, 1932, if they could at all be ratified, the ratification clause or portion of the instrument containing same must have been such as would amount to a present conveyance of the property involved, that is, such as would then convey title within

612

itself, which we deem the clause above referred to insufficient. Montgomery v. Hornberger, 16 Tex.Civ.App. 28, 40 S.W. 628 (writ refused); Lasater v. Jamison (Tex.Civ.App.) 203 S.W. 1151. Moreover, the original lease in which it is insisted that appellees recognized and ratified their deeds to Blankenship and Farmers Royalty Holding Company here in controversy, sent up by appellants for inspection by the court, shows that clause 10, set out supra, is a printed clause, in a general printed form used by appellants, printed in fine print. There is nothing to show that appellees knew of or agreed to said clause, or that their attention was in any manner called to same. This, we think, would negative any intent on the part of appellees to recognize, ratify, or re-execute the deeds in question.

We do not think it necessary to discuss other grounds of invalidity authorizing the cancellation of the instruments in controversy, pleaded by appellees and found in their favor by the judgment of the court. From what we have said, it follows that the judgment should be in all things affirmed, and it is so ordered.

Affirmed.